We have a full day in front of us. We have four cases set for oral argument this morning and one case has been submitted for resolution on the brief. Is Attorney Friedman here yet? Okay. So let's get started with the first case, Superior Industries, Inc. v. Masaba, Inc. 15-1594. Counselor, are you ready?  You may proceed, please. Now, I understand that you reserved five minutes of your 15-minute time to argue. You reserved 5-4 rebuttal. Is that correct? That's correct, Your Honor. Okay. You may proceed. May it please the Court, the District Court erred by construing terms of appeal to include limitations from the specification without considering the entire context of the intrinsic record. In essence, what the District Court did was rewrite the claims under the guise of claim construction. The intrinsic evidence properly considered in total does not clearly and manifestly surrender any scope and does not limit the scopes as they are written. In other words, there's been no redefinition of the terms and claims and there's been no clear disclaimer. Superior's brief addresses many claim terms that are at issue that were erroneously construed, but I'd like to focus my arguments today on two of those claim terms, the RAM section language of Claim 5, Superior's 482 Patent, which is one of the truck and loader patents, and the channel beam language of the undercarriage patents. If we decide the case on those two alone, is there a need to address in your view any of the other issues? Unfortunately, there is, Your Honor, because some of those other claim construction issues address earlier features of the truck and loader patents, those are particularly truck and loader patent terms, and there are earlier versions of the truck and loader device that defendant made that may be covered by one or more of the claims that contain those terms. At some point in time, the structure changed, and so Claim 5, for example, of the 482 Patent issued later than the earlier versions, and therefore would not be directed just to those earlier versions, so there's a few earlier versions that would be necessary to know what the claim construction is for those terms. The District Court erroneously construed the terms 1st and 2nd RAM section to include both a RAM and a RAM support frame. The RAM support frame is not stated in Claim 5. It was a separate feature of the portable conveyor system that was claimed that was important from the specification. The District Court, in fact, did not find that there was a clear and unmistakable redefinition or definition of that term, the term RAM section in the specification, or that there was any clear and unmistakable disclaimer. The District Court merely concluded that based on one part of the specification, the, quote, intrinsic record, the intrinsic evidence demonstrates to one of ordinary skill in the art that RAM section is a structure comprised of both a RAM and a RAM support frame, which begs the question, why? Why is that a required feature of Claim 5? The District Court's conclusion is, in fact, contradicted by a complete review and analysis of the claims and the entire specification. As the Court has directed, we start with the claims. Claim 5, on its face, claims a RAM system of a portable conveyor that is comprised of three RAM sections, a 1st and a 2nd and a 3rd RAM section. The 1st and 2nd RAM sections are claimed as being pivotally mounted on either side of a frame that carries a conveyor belt assembly. And the 3rd RAM section comprises a grate, and that's carried on the frame above the belt assembly and between the 1st and 2nd RAM sections. The 1st and 2nd RAM sections are able to be pivoted from a lowered position to a raised position, this is according to the claims, and the 1st, 2nd, and 3rd RAM sections each are provided with a pair of sidewalls on either side. The sidewalls of the 1st and 2nd RAM sections are claimed to be able to move relative to the sidewalls of the 3rd RAM section when they are raised. The specification is then reviewed, we're told, to understand the meaning of Claim 5, but according to this Court's precedence, we're not supposed to change or rewrite the claim as part of that review of the specification. In the specification, the 1st and 2nd RAM sections are disposed by reference to RAM sections 26 and 28. We have cited to a portion of the specification in our blue brief that the District Court did not acknowledge or address that describes RAM sections 26 and 28 pivoting away from the RAM support frame to move the excess material that falls onto those RAM sections into the RAM support frame and for the next transport vehicle. Further, there's another portion of the specification found on page 831 of the appendix that describes the sidewalls as actually being connected to a side frame number 55 of RAM sections 26 and 28. The side frame number 55 is part of a frame that carries each of the pivoting RAMs. An understanding of the intended use of the claim structures of Claim 5 is confirmed by the specification. The 1st, 2nd, and 3rd RAM sections function to receive material from a transport vehicle. Most of the material is deposited by the vehicle, falls through the grate and onto the conveyor assembly, but the 1st and 2nd sections, with the aid of sidewalls, catch any overflow which can be deposited into the grate and then by pivoting those RAMs upward can deposit that excess material into the 3rd RAM section. Based on an entire reading of the specification, it is clear that RAM sections 26 and 28 are a reference to sections of the RAM system that catch excess material and pivot up to clear that material off of those RAM sections. This was an independent inventive aspect that was addressed in Claim 5. This Court's prior decisions made clear that not every aspect of a disclosed apparatus needs to be claimed to be directed to only one aspect, especially if it has utility separate and apart from the other disclosed aspects. And a RAM support frame is not necessary for the pivoting RAMs to function to catch excess material or to pivot up and clear that material off, and they're not necessary to support the RAMs when they're in the down position. The pivoting RAM sections can be supported on the ground by other structures than the RAM support frame, such as concrete blocks, metal beams, or one more leg that's found on column 7, lines 1 through 8 on page 841 of the specification. So the entire specification does not support the District Court's conclusion that 1st and 2nd RAM sections must be construed to include a RAM support frame, and we ask the District Court's construction to be vacated and corrected accordingly. I'd next like to use my time to address the channel beam language. The District Court erred in construing channel beam to require three complete sides and a partial fourth side. The channel beams are a feature of— was pretty strong, but then every time you refer to this in the specification and you refer to language in the claim, you also refer to three sides and a partial fourth, and then you distinguish between a U-shaped side, which is 3, I think, and a C-shaped side, which is the partial fourth. So haven't you defined that and given that up in your specification? Well, there's a part that is pointed to in our briefing. I believe it's page 25 of our blue brief. It points to a part of the specification that doesn't—it refers to the broader concept of the invention, Your Honor, outside of the context of the specific— Sure, but I get that, and if there was only one time or two times where you talked about this channel opening being three sides and a partial fourth side, that may be examples or certain embodiments, but almost every single time you talk about this and then you also distinguish between a C and a U-shape when you're describing this channel opening, and I don't see how that doesn't define and limit the scope of your invention. It doesn't define and limit. It discloses an embodiment, but it doesn't define and limit. It has to be a clear and manifest intent to limit, and I don't think that that does that. There's a broader disclosure of channel beams, a broader concept of channel beams that are arranged with bracing outside of the interior space between the two beams to create this opening that allows the upper support strut section. That is not a reference to the specific structure of the embodiment that has those specific features. It's not just one embodiment, though. It's throughout your specification, and you make a point of distinguishing between a C-shaped opening, which is what you claim, and it even, I think, uses that language. I could be wrong, but it certainly, at least the language in your claims are consistent with that, and a U-shaped opening, which it doesn't seem to claim. I don't think there's any reference to a U-shaped opening. The U-shape is one way in which a channel beam is— You don't think there's a reference to a U-shaped opening in your specification? No, Your Honor. I think it's always referred to as a C-shaped channel. It's in the one portion. You use U-shaped channels in combination with, by welding those to a metal plate to create one version of a channel beam, but the U-shaped beams are not the channel beams. They're one part of a structure of one embodiment, and it looks like I'm into my bubble time, so if there's any further questions, I guess I'll reserve my time for the rebuttal. Thank you, Your Honor. Good morning. May it please the Court. I'm Kim Shattuck here on behalf of Masaba, Inc. I'd like to start with this Court's prior decision where it instructed, or where it an infringement analysis so that this Court would have a factual context in which to review the disputed claim construction rulings and a better understanding of how the Court's review of those rulings would impact the infringement analysis. In particular, this Court asked the District Court to look at two issues, whether the Masaba accused unloaders— Can you just get to the channel beams argument for me? Sure. Because that's what I found the most difficult. When I'm reading the claims, which we're supposed to start with, I don't see a lot of stuff that says they have to be partially surrounded on the fourth side. It talks about having a generally C-shaped beam and the like, and parts of them, but it doesn't—to me, a C-shape could also just be three sides. I mean, that actually looks like a C to me, just as much as the partial on the fourth side does. Why is the District Court limiting construction requiring the partial fourth-sided?  We start, Your Honor, with the summary of invention, and I believe it's both in the abstract and the summary of invention, which would speak to the invention as a whole. It talks about the first stretch section having the facing surfaces, and then there being a slot in the perimeter edge adjacent to those facing surfaces. So you have the top beam coming down, the channel beams telescopically receiving those, and the only way you can have a perimeter wall with a slot in it adjacent to the facing surfaces of the received beams is if you have that fourth side. And that is in the abstract, in the summary of invention, and I believe elsewhere in the specification. And at least once in the specification, it does say that the channel beam substantially surrounds all four sides of the— But where does it say all four sides? I'm aware of the references to substantially surround. There's one. Let me find the patent, Your Honor. Column 5, lines 50 through 50. You're on A72, right? Yes, A72, column 5, the 101 patent. It talks about how there are—channel beams are configured to surround substantially all four sides of the respective beams that they engage with. And then it goes on to talk about how you can make various configurations. And then at the end of that paragraph, it says where the C-shaped beams include walls defining a slot that are configured to surround substantially all four sides of the respective beams that they engage with. So when you have the abstract, the summary of an invention, and the specification, or the written description itself, it's clear that what they claimed was a channel beam with all four sides. As you point out, Your Honor, there's not any reference to a three-sided beam. The invention itself talks about how you have to have this slot so that you can have the beams from the first strut section that are cross-braced so those braces can slide in the slot. And likewise, when you have the term elongate opening, which is the slot that indicates that there is a fourth side with an opening in it. So any other questions? And then just let me say, and it's well briefed, I know that Masaba doesn't have a channel beam with three sides or four sides. Masaba's second strut section consists of a rectangular four-sided tube that is continuous with no slot and no opening anywhere. And as the district court found, it's self-evident that you can't have a channel beam, whether it's a three-sided beam or a three-sided beam with a fourth side and a slot, when you have a fully enclosed, uninterrupted beam. If we were going to determine that the district court misconstrued channel beam and elongate opening and instead adopt Superior's proposed construction, would you still have a non-infringement position with respect to the 101 and 231 undercarriage patents? Well, if Superior's proposed instruction removes the term beam from... Obviously, channel beam must be a beam. And Superior's proposed construction takes out the beam as well as the channel and says it's any structure that creates a three-sided wall. So what Superior argues is that we have our four-sided beam and then we also have some bracing on the top and bottom of that four-sided beam and that that creates a channel beam. So I don't know what the district court would do with that if you adopted their construction of a structure that's a three-sided... Their construction that's any three-sided structure is what Superior is claiming. Would you have a non-infringement position still? We would. It wouldn't be summary judgment, perhaps, but we would still have a position. But we strongly urge the court not to adopt Superior's construction that completely reads out beam and channel from its construction. Why can't you have a three-sided beam? Why can you not have a three-sided beam? Or when we look at Superior's, we look at... Let's see. I have what's marked SA-53. Supplemental appendix. Yeah, the Masada strut. Seems to me that you can still have a channel so that you have this internal beam sliding up and down. So you still have a channel, but why is it necessary that not having a four-sided beam reads out beam in its entirety? With Superior's proposed construction? Yes. Because its construction says not a beam with three sides. Superior's proposed construction says a structure with three perimeter... I'm simplifying it, but a structure with three perimeter walls. That's what Superior has proposed. It has never proposed a construction that includes the word beam. Its proposed construction says a structure with three perimeter walls. And they're doing that not because the specification discloses that, but because they're trying to come up with a construction that would give them an argument of infringement with respect to our four-sided beam that has the cross braces. Is that because you have a beam and then you have a structure inside the beam that allows for the telescoping? Yes. Our beams are on the outside. Why couldn't all that whole structure be just defined as the beam? Of what we do? Yeah. Because then it wouldn't be a channel beam, especially as defined and construed in the specification where it talks about the channel beam being two parallel. Plus you have to have two parallel beams. So if the whole structure creates the beam, then you don't have two parallels. You have one structure. I guess you have two sides to it, but really it would be one structure. But given that the specification talks about it being a beam that substantially surrounds the inner beam, it just doesn't work. They've tried to be creative in coming up with a construction that would give them an infringement argument. Well, they're just saying that the beam doesn't have to have four sides. They're saying more than that, Your Honor. They're saying they're taking beam out and saying it's any structure that has three wall portions. What about claim one of the 231 patent? So I'm looking at page 888, brown line 65. And there it says that there's first and second channel beams, each comprising a generally C-shaped rimmed wall having first, second, and third wall portions. It says it's C-shaped, but it says it has first, second, and third wall portions. Yes, Your Honor. So why doesn't that just read on having three wall portions? Because it uses the term comprising of first, second, and third wall portions, which is a non-limiting term. It says having first, second, and third wall portions. Which line are you on, Your Honor? 66. Generally in second channel are each comprising a generally C-shaped perimeter while having first and second wall portions. It doesn't preclude that there's a partial fourth side. It's our argument, Your Honor, that when you read the specification as a whole, the patent as a whole, and the number of times it says that you have to have, it substantially surrounds and has a fourth side with a slot, that their claim language can't change what the channel beam is. And the specification indicates, in the summary of an invention, indicates that the channel beam has to have that partial fourth side and a slot. Are you relying at all on the language that describes them as being U-shaped and that being different from C-shaped in any way? We have argued that below. We didn't brief it in our brief because of page limitations. But yes, we have argued that a C-shape is different than a U-shape. A U-shape has three sides and a C-shape has a partial fourth side. Why would you say C-shape if you didn't mean to indicate that there was a partial fourth side? You would just say U-shaped. And when you read the written description and the use of the C-shaped, it's clear that there has to be that partial fourth side. I don't know that I would think that C-shaped and U-shaped are the different, except for the fact that this specification does use both those terms, suggesting that they have a different meaning. Right. I would agree with that, Your Honor. And again, I want to go back to where I started. Both in the specification and in the summary of invention, it talks about that the invention has— let me get to the exact language so I'm not— I'm looking at the 231 patent. Each— Each—I'm looking at A-70, the 101 in the summary. Each channel beam is further configured to define a slot in the perimeter wall— I'm sorry, what line are you at? 51. A-70, 51 in the summary. Each channel beam is further configured to define a slot in the perimeter wall adjacent to the facing surfaces of the respective beams of the first stretch section. So what that says is that the channel beam is configured to define a slot in the wall adjacent to the facing surfaces of the inner beam. So there has to be a wall adjacent to the facing surface of the first stretch section and a slot in it. There's—and that's why we argue you can't have a channel beam configured to define a slot in the perimeter wall adjacent to the facing surface of the respective beam of the first stretch section unless you have that partial fourth side. And that's in the summary, it's in the abstract, and I believe it's also in the specification. And that's one of the things that the district court relied on in saying you've— in finding the partial fourth side because they've said that their claimed invention and in the summary, which speaks not to an embodiment but to the invention as a whole, that you have to have a slot in the perimeter wall adjacent to the facing surface of the respective beams. So there has to be that fourth perimeter wall. With respect to the 5—with the 482 patent in Claim 5, just quickly because I'm running out of time, I would just direct the court to the summary of invention for all of the unloader patents. It talks about that there is a ramp and a ramp support frame for the ramp section and the ramp section is expressly defined in the specification, explicitly and expressly, as being a ramp and a support frame. Thank you, Your Honor. Okay, thank you very much. Mr. Weirich. Thank you, Your Honor. We've already pointed out in our briefing, and it bears mentioning again, that the summary and the abstract are one portion of the specification. It's not the sum total, and it's inappropriate to kind of mechanically link the discussion in those sections as the broadest treatment of the subject matter that was disclosed. We pointed out that on page A71 of the 101 patent, columns 3 through 21, there's a broader discussion of the invention, broader than the abstracted summary. And this court's precedents make clear that there is not a mechanical review of only portions of the specification. You have to review the entire specification to make sure that there aren't broader expressions, and in this case there are broader expressions of the invention in the specification outside of the summary and the abstract. I'd like to ask you about those U-shaped beams, because I think you said your specification didn't use that term. But doesn't it use that term at page A72, column 5? Yeah, I would like to correct that, Your Honor. Opposing, or my co-counsel pointed that out to me. Because there's two references to U-shaped beams in the specification. Two paragraphs that at least describe that. Right, there's different paragraphs, and one which forms one embodiment of a C-shaped channel beam. It's the way that these shallow U-shaped beams are welded to a metal plate to form one embodiment of the invention. U-shape and C-shape, I believe Your Honor mentioned, are really kind of describing the same shape. It's just whether you're looking at it in one orientation or another. And the specification, in fact, says other shapes are possible. So it's not a narrow disclosure or a limiting disclosure. The shape, what's important, and what the specification makes clear, is that this is an invention that allows cross-bracing of both an upper support strut section and a lower support strut section. But the only concern I have is you do use the word C-shaped in your claim. So maybe other shapes are possible, but you do use C. In the claims I mentioned, C-shape, I stand by that as a description of the features of that claim. C-shape requires a sidewall, a top and a bottom wall, and that's what helps create a strut section that can be braced outside of the space between those beams so that there's room for the upper strut section, both the beams and the cross supports, to slide within that structure. And that's the important aspect of the invention that was being claimed here. It's a structure of a fully assembled strut assembly that is telescoping, and that allows both the upper and the lower strut sections to be cross-braced. And the advantages of that are touted in the specification. It allows for better rigidity of the strut assembly and balancing of hydraulic pressures. Nothing in that says that the fourth partial sidewall plays any role in providing that aspect of the invention. It's the ability to cross-brace beams and form a channel and an open space between them so that you can cross-brace an upper strut assembly and have now a fully braced telescoping support strut for improved rigidity and stability in balancing the hydraulic pressures. There is no emphasis in the specification about fourth partial sidewalls and the role they play in cross-bracing or in this stability and hydraulic pressure balancing aspect. Any further questions, Your Honor? Okay. Thank you very much.